I'm glad to be able to have a sitting here in Wilmington, Delaware, and for those who are here to argue, I thank Judge Hall for her kindness in allowing us to use her courtroom, and let me first make sure that we have Judge Roth and Ms. Kasdan online in a way they can hear us. Judge Roth, can you hear us okay? I hear you loud and clear. Okay, thanks. Ms. Kasdan? Yes, sir. I hear you. Okay, that's fine. Thanks. Well, then we're ready to call our first case, which is Castillo-Reyes v. Attorney General, and we'll hear from the counsel for the petitioner. May it please the court, Marcia Kasdan representing Cesar Calixto-Castillo-Reyes petitioner. Do you want to reserve any time for rebuttal? Yes, Your Honor. I would like to reserve, with the court's permission, three minutes. All right, that's done. You may proceed. Yes, Your Honor. May it please the court. Cancellation of removal is a form of immigration relief that is available in removal proceedings initiated on or after April 1, 1997, and it applies to Cesar Calixto-Castillo-Reyes. We're well familiar with that. So let's jump on the primary question here, which is the sua sponte character of what you're asking us to order the government to exercise the sua sponte power, right? I'm asking that you do so, yes. I thought what your initial argument was that isn't there a question of eligibility, a gateway issue as to whether you could even make the request? Go ahead. Not in a situation where, as here, you have a defect in understanding. You have an incorrect legal premise that the court, the BIA, is a misunderstanding in that they fail to understand the notice to appear and what was the meaning of the notice of appear. And in Pereira starting, as we all know. I'm a bit lost. I thought you were at one point arguing that he could be, despite the fact that he was removed and came back here twice, that he can continue accruing physical presence under the recent Supreme Court decisions in Pereira. And as Chavez, he's eligible to be considered for cancellation of removal because he now meets, in your view, the 10-year presence rule. And you do have some circuits that have seemingly gone that way. But isn't that as far as we could possibly go if we were to rule in your favor? The situation, Your Honor, is that because of Pereira and more clearly because of Ms. Chavez and Guadalupe in our circuit. When on November 16th, the counsel submitted that motion to reopen to apply for cancellation of removal under Section 248B1. Because he never received a legal notice to appear under Section 1229A1, he then submitted a motion to reopen. And because of the decision, particularly in Ms. Chavez and Guadalupe, it then for the first time made him eligible for release. His motion to reopen is what, 17 years late? That's where the misunderstanding is, Your Honor. The notice to appear is a situation where if it is a defect, it didn't exist to stop time. And so the period that we have to consider is not the period of 17 years prior where he did not have the ability to ask for cancellation and comes to the situation where now he has the ability. He is eligible. He gave in an application which shows his eligibility. In your view, Ms. Kasdan, when did he become eligible? He became eligible on April 29th, 2021, when the decision, when the motion to reopen was submitted for the purposes of allowing the BIA to make a decision. That is when he became eligible. What is it that changed in that 17 years that in your view was the trigger for a new opportunity and maybe in your view the first opportunity for him to make the application? It was a fundamental change in the law, Your Honor. Right. Which occurred when? Here was viewed and was acted upon, and it happened when Ms. Chavez happened and the date that it happened was April 29th, 2021, and it did not happen before then. And when that happened, it wasn't that we go back 17 years to what happened in ancient history. We go to the change of law, and it's the BIA's misreading of the stop time rule that was the reason for rejecting Calyxte Oreas' motion to reopen. They didn't get it. They didn't understand what our tribunal does understand, and that is that a defective NTA does not stop the time. And not only doesn't it stop the time. So your assertion is to be clear that on the date that the decision came down that you view as changing as being the change in the law affecting the stop time rule, the client filed within the appropriate time period after that. Yes, Your Honor. It was a reasonable time thereafter. It took time. What reasonable time? How long? Somewhat after 180 days, and the EOIR itself decreed through its regulations that I'm sure my adversary is aware of that their attorney should look to cases and see whether or not respondents were able to avail themselves of the new law and the new rights that did not occur before. Because it was... I guess what I'm trying to get at, Ms. Kasdan, is even under your view of it, what you're asking for is sua sponte action, right? Even under your view of it, and saying it's not 17 years, you would be time barred, but your belief is we should have the benefit of sua sponte action by the attorney general, right? Because it's a fundamental change. It is a monumental change. It seems like it's more basic than what you're saying here. Let's assume for the moment, let's just assume for the moment that somehow he is eligible for a continuous presence. If that's the case, let's say despite the fact he was removed and came back twice, that he meets a 10-year rule, the next thing you've got to do is you have to show extraordinary circumstances in his case. And then the next thing, if that's denied, then you are in effect saying, well, perhaps you have the discretion to do otherwise, but we can't tell the BIA or an IJ how to use its discretion when it has discretion. So you've got three hills to overcome here, and it seems like it's very difficult, even on the first one, to try to make the claim here. I realize you have some support from other circuits on the first issue, but this is a case of bad facts. It's very simple. I mean, for example, it's just extraordinary circumstances. You're unmuting, Ms. Kasdan. Try again. Got it. Thank you very much. Your Honor, I believe that we're on stronger ground in that I believe that the cases of Herrera and Ms. Chavez and in our circuit, Guadalupe, give him – That's on the first prong that you've got to – let's assume for whatever reason that you complied with the 10-year presence rule. Let's just assume it. What are the extraordinary circumstances here? The extraordinary circumstances are that this was a fundamental, monumental change in the law. No, no, no. I thought at the beginning you said you wanted to address the merits, and I said you've got some gateway issues. But let's just say on the merits, what are the extraordinary circumstances that you would allege exist here? Well, as I said, the fact that it's continuing permitted us to consider the equities, the continuing equities. No, no. That's not my point. If you get to the merits – If you get to the merits – The extraordinary circumstances that you would argue – although I.J. Wilson, I think, in effect looked at those and said the children, for example, are much older than what you would normally have, and the type of issues that the one child has are the types of issues that almost everyone has. They're not extraordinary by any stretch. And in fact, the child is showing progress in school. That's not entirely correct. It really isn't. And it's a continuing right to submit material, but as it stands, we're talking about a 12-year-old child and an 8-year-old child, and we're talking about a 12-year-old child that's in special classes that has surgeries every year for his hearing, and every year his hearing gets less and less. And we're talking about a child that has eye difficulties and attention deficit disorder. We're talking about a father that dedicates most of his waking hours every minute. And that's an argument that really has to be made to an I.J. and not to us, correct? Your Honor, so going back to the arguments that have to be made to you, the equities, because of Ms. Chavez, continue to improve, meaning the hardships to this child continue to grow. And additionally, just like in any case – Hold on just a minute, Ms. Kasten. You've hit on a very important point that I wanted to ask on. You say the equities continue to accrue, and that touches on your argument that this is – there's a continuing application here. So everything that's happening is an equity that ought to be considered. Would you just address straight up what I understand the government's argument to be, that a person can't rely on equities that accrue while they're in the country without authorization? They're not supposed to be here, and it's not appropriate for them to be saying, I've got extraordinary circumstances because after I was ordered to remove, they stuck around anyway. Had the country given and issued, which it could have at any time, a correct notice to appear, then in that case, the client, or Ms. Chavez, or in my case, Cesar Calixto, would not have a new form of relief. He would not have cancellation, and he can't answer to the issues in cancellation before he has the ability to bring it forth. And so it doesn't go back 17 years. It goes to the time that that ability appeared. And so he – Was he under an order of removal? He was under an order of removal that he appealed, and the appeal was denied, and it only appeared when we in this circuit found in Guadalupe and the Supreme Court found in Ms. Chavez that this was a new and available to him relief that was not – Okay. So in order for us to follow your line of reasoning, I want to make sure I got it right. In order for us to follow your line of reasoning, we would have to say that an order of removal that was many, many, many, many years old – 2004. Yeah. With the BIA ruled. Something going back, moving on 20 years, that that order of removal and all the time spent in the country under an order of removal illegally, those things are meaningless in terms of being – Despite the fact that he was not leaving the country, that he's entitled because of a change in – a more recent change in the law to have the almost two decades of illegal presence in the country not only ignored, but all the things that should be viewed sympathetically, and there certainly are things that can be viewed sympathetically from your client's perspective. He's entitled to have all those things viewed sympathetically. That's the arc of your reasoning, right? Wrong, Your Honor. I'm sorry. Respectfully, my reasoning is that Ms. Chavez was clear that the NTA serves as a basis for committing a grave legal proceeding, and it's a case-initiating document, as you're well aware, and there's no entitlement to denigrate – Well, there's no – there's no – Ms. Kazin, I think we're, like, talking past each other. What I'm trying to ask, perhaps inartfully, is this. Your view is the later change in the law had a retroactive effect going back almost two decades to make the order of removal null and void so that everything that happened after that is not to be viewed as against him because he was here illegally, but as in his favor, right? That's your point. It is not my point, and I'm sorry for being inartful and obviously not clear enough. The clear point is he had no new relief, had no new way to bring this forth until the Supreme Court and the circuits decided that he had that relief. And when he had that relief, I'll doubt about it. Let's go back to the very beginning. So you're saying that somehow because of Ms. Chavez and Perea, you have – he's now eligible to be considered for cancellation of removal? Yes, Your Honor. Is that right? Yes, Your Honor. Okay. Thank you. Well, we'll have you back on rebuttal. Thanks very much, Ms. Kasdan. And we'll go ahead and hear now from counsel for the Attorney General. Thank you. Good morning, Your Honors. May it please the Court. My name is Kosei Ugamori, and I represent the United States Attorney General in this case. This petition for review should be dismissed because this Court lacks jurisdiction to review the Board's denial of a sui sponte reopening, and the petitioner has failed to show an exception that would allow for judicial review applied in this case. First, the petitioner has failed to show that the Board's decision rested on an erroneous legal premise. And second, the petitioner has failed to show that the Board had derogated or departed from a settled course of adjudication, granting sui sponte reopening in his situation. Yes, that is the government's understanding. I'm sorry. I could not hear that question at all. Could you repeat it, please? The question was that this person, just to correct something I stated earlier, this person was removed or supposed to be removed in 2004 after the BIA dismissed the appeal of the petitioner here. And he has remained in this country since that time, despite the order of removal. And the counsel clarified that that's correct. Mr. Mugamori, let's have you address what Ms. Kasdan has been arguing. Do you agree that the NTA in this case, the notice to appear, was, under current law, legally defective? Yes, Your Honor. Under current law, it did not specify the time and date of the removal hearing, so the 10 years would continue to run. So where's the flaw in her reasoning when she says, hey, this is the state of the law now. He made his pitch within a reasonable time after the law changed. He never had an appropriate notice to appear. So the order of removal should be viewed as ineffective. His stop time rule should never have kicked in. He should be okay. Well, what is at issue here is the court's, or I'm sorry, the board's exercise of sui sponte authority. And there are only two exceptions that would allow for judicial review of that authority, one of which is that the board's decision rests on erroneous legal premise. In this case, however, it's evident from the face of the board's decision that the board did not misapprehend or misunderstand the law in any way. It accepted the petitioner's argument. It recognized and acknowledged the intervening law. And then it exercised its discretion in denying sui sponte reopening. So where you're getting, like, you're jumping ahead of her point, I guess, which is I take the government's position to be so what? You know, maybe said nicer than that, but it's so what? Even if you accepted her argument that the change in the law that was affected by those more recent Supreme Court decisions somehow invalidated the earlier order of removal, he still didn't move timely. And therefore, he's not entitled to anything. He's resting on the good graces of the attorney general to exercise sui sponte review. That that is that where you you were coming from the government. Yes. However, the government did not understand the petitioner's raising a jurisdictional argument, arguing that and she had responded to your honest question in that way as well, that she is not arguing that Nish Chavez invalidated the order of removal. The order of removal was valid at the time it was entered, and it remains valid at this time right now. What Nish Chavez did was only affect the stop time rule so far as the petitioner now seeks cancellation of removal. So that order of removal remains valid here on it. And there's no doubt about that. It remains valid. The question is, and I think you stated it, the cancellation of removal. And what do you need in order to be able to bring a cancellation of removal? And one of the things you need is 10 years of continuous presence in the United States. And then the second thing you need is unusual, extremely exceptional and extremely unusual hardships. I call them extraordinary circumstances. And then also, even if those are met, you still have to have it's still discretionary. Is that correct? Yes, Your Honor. There are additional elements that are required for cancellation of removal. Yes, cancellation of removal itself is a discretionary form of relief. But all that aside, the board said here, even considering petitioner's potential eligibility, he still doesn't warrant to respond to a reopening. And so the question here is, is there any legal error in the case? Any legal misunderstanding or misapprehension of the law by the board that would allow this court to? Can you continue? Can you speak into the mic? Can you continue? We got it. I'm talking, I think, into the mic, but can you hear me now? Yes. Okay. Can you continue accruing physical presence for the purpose of the cancellation of removal statute? And I thought that there were some cases that thought that perhaps you could afterwards. But what is your response to that? Yes. The answer is yes, Your Honor. The subsequent service of the notice of hearing is insufficient to stop the time for purposes of cancellation of removal. That was the holding in Nis Chavez. And the government would, must comply with that. I guess if there is an order of removal in 04, he doesn't remove himself. Doesn't leave. Doesn't leave. Can you continue accruing physical presence for the purpose of the 10 years for cancellation of removal? That's my question. The board has at one time issued a precedential decision that a final order of removal cuts off the 10-year continuous presence. That's not an issue that was raised in this case. And at this time, I can't say offhand if this court has spoken on. Well, you've gotten to the point that I was trying to get at. I understand that the order of removal didn't disappear. But the argument, in essence, is I'm entitled to this time. I'm entitled to the continuous time in the country because the order of removal was wrongly instituted because NTA was wrong. That's the pitch that's being made to us. So if you have recognized that a defective NTA does not appropriately lead to application of the stop time rule, why shouldn't that benefit Mr. Castillo-Chavez here? Because the board did not. You're right. The board did not say the petitioner was currently ineligible for cancellation of removal. The board recognized petitioner's potential eligibility for cancellation of removal. The issue here is whether the board exercised its discretion in a way that was legally erroneous. That is, did it misunderstand the law in some way? And it didn't. So let's get past step one. That's the plumey step, right? Let's get past step one and look at extraordinary circumstances, which is where Judge Ambrose was trying to get your colleague to go and where I think he's trying to get you to go to. And I would like you to go there as well. I understand the argument to be, look, this is an extraordinary circumstance because there's brand-new law. Everybody's absorbing it. He moved within, you know, right around 180 days. You give other people a break in circumstances like that. Here are 15 cases where the BIA has done that. You've got a settled course of behavior at the agency, and that is something you should have to live with. You shouldn't just be able to say arbitrarily, not for you, Mr. Castillo-Reyes. That's the point I think we're trying to get you to meet head on. Why should we ‑‑ what's wrong with her argument that you've done this for other people before lots of times? You should do it for him. So first off, I'd like to clarify that the settled course exception and the legal ‑‑ erroneous legal premise exception are the only two exceptions for review, pursuit, and spying. We got you. So there's no review of extraordinary circumstances. Extraordinary circumstances is sometimes the language that's used, so we're not confused about that. We're trying to ask you, go ahead and use the terms you want to use. Yes, Your Honor. If you want to use the term settled course of action, go with it. But answer the question that's being put to you, which is people have done this before. You've done it for people before in similar circumstances. Go ahead and take her on on the facts if you want. Just answer that argument that's being made, which is there's a settled course here, and you're being unfair and arbitrary in the way you're denying him when he came forward within a reasonable period of time after a significant change in law. The petitioner cited 15 cases, but as the government showed in its brief, they're all distinguishable. They involve motions that were filed timely, motions that were filed within, you know, a few years. Four of them are close to being on point, are they not? No, Your Honor. Even the one that was filed 20 years after the final order of removal, that one had a specific finding that the petitioner in that case had established a prima facie case of cancellation of removal, which is not what we have here. The board only said that petitioner is potentially eligible for cancellation removal. Consider the entirety of the case and then exercise discretion in denying Swiss bond day reopening. I understand what you've said, that there can be a settled course exception. Is that correct? This court has recognized one. Yes, Your Honor. How many cases are enough to create a settled course exception? There's not a numerical benchmark, Your Honor. When do you hit that tipping point, would you say? Well, this court has said in Sangu Park v. Attorney General of the United States in 2017 that settled course, in order for a settled course to be established, there has to be a reasonable inference that the board has, in fact, limited its own discretion to such an extent that an irrational departure from a settled course would constitute an abuse. And we don't have that here with 15 cases, Your Honor. How many would it take? I understand you said they're distinguishable, but just for the sake of argument, let's say we thought all 15 were on point. Even if they were all on point, Your Honor, all it shows is the board's broad breadth of discretion. It can say in a public decision, in a matter of HYZ, that a person who becomes eligible for relief after a final order of removal is entered, ordinarily cannot show truly exceptional circumstances to warrant Swiss Ponte reopening. It can say that on one hand, and yet it can pick out 15 cases by looking at the specific facts of those cases and still grant Swiss Ponte reopening. So are you suggesting that the rule we've laid down is illusory because you could really never make the case? What I'm trying to find out, how would they ever make the case? If no matter how many cases they brought forward, you could say distinguishable or, yeah, that's fact specific. We're still entitled to make this decision. Are you really saying that, you know, Third Circuit and some circuits have said this, Third Circuit's off the beam on this. There's no such thing as a settled course of action here. Is this the government's polite way of saying the same thing? No, Your Honor. This court has found a settled course in Chahate v. Attorney General of the United States, for example. And the board has itself constrained its own discretion in other cases. Historically speaking, the board, for example, has announced in a precedential decision that it would exercise Swiss Ponte reopening in the Chinese population control cases in the late 90s, for example. It would take the board itself making an announcement, really, to do that in the government's view. It's not counting up cases. Well, it could be an announcement, but it could also be implied, as long as that implication is strong, Your Honor. Because at bottom, what this court said about settled course is that the agency itself has to restrain its own discretion. There is no entitlement to a settled course exception. It's something that's recognized by exercise of the agency's action. Should individual equities play any part in this? I'm struck by the fact that the man is under an order of removal, what, in February of 2004? Yes, Your Honor. He stays in the country. He stays in the country for almost 20 years. The government doesn't do anything to get him out of the country. You've ordered him removed. It doesn't appear that the government takes step one to effect the removal. If the government chooses to leave somebody here for 20 years, living a life, building a life, is it just all the equities that build during that time are meaningless because the government finally decides to get around to it and throw somebody out? No, Your Honor. And the board has said as much. The board said in a matter of H-Y-Z, a precedential decision, that it is generally the case that equities acquired after a final order of removal is entered is not truly extraordinary in order to warrant a response to a reopening. But there are cases that the board, they look at individually, like the cases that the petitioner cited, where the board would still grant to respond to a reopening. It could be compelling medical. You're getting right to the point that I'm sorry, which is at what point do we say, well, this is just arbitrary. There's just there's no rationality here at all. It's completely arbitrary that the government picks winners and losers and you can't figure out what's going on. We leave this guy here 20 years. He builds a life. He has children. They have problems. They got, you know, they built a whole life here over two decades. The government hasn't done anything to act on its own order. And they say, you leave right now. Next person comes along. They say, yeah, you can stay. And the best that the government can do when it comes forward is to say, well, we have unfettered discretion. If unfettered discretion means that, what's the difference between unfettered discretion and arbitrary and irrational? I think two points here. First is that we're not talking about ICE's enforcement of removal order. We're talking about the petitioner seeking to reopen removal proceedings. Yeah, but aren't those things all in the mix here? Your Honor, the petitioner can. Several courses of behavior, et cetera. But, Your Honor, you know, there are far more persons with orders of removal than ICE can remove. And second of all, statute and the regulations both contemplate self-removal. So it's not all on the government. And third of all, the board here, even if it denies to respond to reopening, ICE could continue to not enforce the order of removal in this case. It's a possibility, Your Honor. I can't speak on behalf of ICE. So we could go through all this. We could render a decision. What you're telling us is they could say, yeah, we're just not going to do anything about it. It was fun to have everything go to the Third Circuit, maybe even to the Supreme Court. But it's all smoke and mirrors because we're not taking any steps to remove you. Stay here. Well, no, Your Honor. The order of removal is in order but doing nothing. Well, it is ordering the individual to leave. Right. And there's a regulation that talks about self-removal, Section 241.7, as well as Section 1231 of the statute that contemplates self-removal as well. But all that aside, what is before this court is jurisdiction, Your Honor. This court has already held that there is no jurisdiction to refuse to respond to reopening. And there are only two exceptions to that. And the petitioner has not shown legal error because the board had considered the change in law and said, still, we are not going to exercise to respond to reopening. Right. We've been talking about settled course action or, as it's sometimes been called in this context, an extraordinary circumstance in association with that. But I think we understand your position when you're rightly making us focus on the jurisdictional point. We understand that. Judge Roth, do you have anything for Mr. Ugamorin? Nothing further. Okay. Thank you. Thank you very much. Thank you. Ms. Kasdan. Your Honor, it appears from the decision of the BIA that the court did not understand the continuing nature of cancellation of removal and that the defective NTA allowed the necessary 10 years, the time to approve, the equities to accumulate. You know, we've only got three minutes, and we understood your argument in your opening. It would be most helpful if you would focus on the very specific point that the government made in its briefing and that has been pointed out by Mr. Ugamorin just now at the podium, which is we just don't have jurisdiction to deal with this. This is sua sponte removal. Our own precedent tells us we don't have jurisdiction except in two limited circumstances. You haven't shown a mistake of law, which leaves you with only one route forward, and that is settled course of action where the BIA has itself constrained itself, and you haven't shown that. So focus on that, if you would. I believe that there was a mistake, and I just want to go through it just for a few seconds, and that is that the defective NTA made the time continue. And in the decision itself, he talks about the present motion was filed more than 17 years. Ms. Kasdan, the question is, assume that you're right on that. Now, in fact, you get all the way to where the IJ can make a discretionary decision. The IJ makes a discretionary decision not to grant sua sponte reopening. Do we have jurisdiction under 1252? I believe that we always have jurisdiction in this circuit. How so? How so for a discretionary decision like this? Because it is an extraordinary situation, because it is a situation where it is an abuse of discretion not to recognize such a fundamental change in the law. It is an abuse of discretion. That change in the law relates back to the possibility that you could come back, the eligibility. I said let's assume that for the case. How do you overturn the discretionary decision by an IJ not to sua sponte grant reopen the proceedings for cancellation removal? I believe honestly, Your Honor, that the BIA has the right and the IJ has the right not to. They have the right. They've exercised the discretion not to grant that particular, quote, right, close quote. Where's the jurisdiction? Where's the jurisdiction? They have to at least get the point of discretion. The BIA in this situation wrongfully determined that it goes back 17 years, whereas it doesn't. They used a little wrong. You're not answering my question. The question really specifically is I guess it comes down to this. You rely on those 15 cases that you brought forward to show a settled course of action, and that's where you're hanging your hat. Is that correct? It's not the only place. I really believe that there was a legal defect. I really believe that the BIA, when it went into the decision, showed clearly that it was looking at the wrong time. We've tried to say we'll give you that, but I think we've got your argument. In fact, I'm pretty sure we've got your argument. Going back to the 15 cases, my only one legal thing is to say that these 15 cases all dealt with the same broad situation, the new law causing an ability to ask for cancellation and their ability to go forward it, underlying the fact that they recognized that this was a right that the client had. Thank you, Your Honor. Okay. The ability to have the opportunity for discretion, not to have it based on something wrong. Thank you. All right. We've got your argument. We thank you, Ms. Cassidy. We thank you, Mr. Ugamori. We've got the case under advisement, and we will call our next case.